1
2
3
4
5
6
7
8
9
10
11

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| A-TEK MECHANICAL, INC., CURLY PHOM,<br><br>　　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>KHW SERVICES, INC., JEFF NEWTON, SARAH NETWON,<br><br>　　　　　　　　　　　Defendants. | Case No.: 3:21-cv-01974-H-WVG<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS**<br><br>[Doc. No. 8.] |

On November 22, 2021, Plaintiffs A-Tek Mechanical ("A-Tek") and Curly Phom (collectively, "Plaintiffs") filed a complaint against Defendants KHW Services, Inc. ("KHW"), Jeff Newton, and Sarah Newton (collectively, "Defendants"). (Doc. No. 1, Compl.) On January 19, 2022, Defendants filed a motion to dismiss Plaintiffs' complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 8-1.) On February 16, 2022, Plaintiffs filed an opposition to Defendants' motion. (Doc. No. 13.) On February 18, 2022, Defendants filed a reply. (Doc. No. 15). On April 8, 2022,

the Court took the matter under submission pursuant to Local Rule 7.1(d)(1). (Doc. No. 17.) For the reasons that follow, the Court denies Defendants' motion to dismiss.

## BACKGROUND[1]

Plaintiff A-Tek is a California corporation that specializes in the design, installation, and maintenance of heating, ventilation, and air conditioning ("HVAC"). (Compl. ¶¶ 10, 17.) Plaintiff Phom is a California resident and the owner and founder of A-Tek. (Id. ¶¶ 10, 19.) Defendants Jeff and Sarah Newton are Colorado residents and the founders of Defendant KHW, a Colorado corporation and consulting firm. (Id. ¶¶ 10, 35.)

The relationship between Plaintiffs and Defendants began in 2013, when A-Tek hired Jeff and Sarah Newton. (Id. ¶¶ 23, 25–27.) Jeff Newton was hired to work on A-Tek's management and estimating projects while Sarah Newton was to assist with A-Tek's accounting. (Id.) During the first year at A-Tek, Jeff and Sarah Newton were allegedly employees of A-Tek and were compensated directly from A-Tek's payroll. (Id. ¶ 33.) In 2014, Jeff and Sarah Newton founded KHW and began working for A-Tek as consultants rather than employees. (Id.) In April 2017, Jeff Newton, Sarah Newton, and KHW relocated from California to Colorado. (Id. ¶ 43.) On July 24, 2017, Jeff and Sarah Newton each signed a Confidentiality Agreement with A-Tek. (Id. ¶ 97.) The Confidentiality Agreement allegedly prohibited Jeff and Sarah Newton from disclosing "confidential, propriety, and trade secret information belonging to [A-Tek]." (Id. ¶¶ 97–98.)

During this time, Plaintiffs allege Defendants began working with other companies in A-Tek's industry. In 2016, Plaintiffs allege Jeff Newton began working with Prodecomm Engineering ("Prodecomm"), a design engineering firm, as Prodecomm' pre-construction mechanical engineering support consultant. (Id. ¶ 49.) Plaintiffs allege Jeff Newton worked full-time for both A-Tek and Prodecomm, but A-Tek continued to compensate Jeff Newton for a forty-hour work week. (Id. ¶¶ 52, 55.) Plaintiffs allege that due his split time between A-Tek and Prodecomm, Jeff Newton became less involved in

---

[1] The following allegations are taken from Plaintiffs' complaint.

the day-to-day affairs of A-Tek. (Id. ¶¶ 52–54.) Plaintiffs allege Jeff Newton began making "several large errors on bids" for A-Tek, including failing to confirm quotes, underbudgeting bids, and not accounting for certain material and labor costs on several projects. (Id. ¶¶ 52–54, 56, 82, 84–94.) Plaintiffs allege that one of A-Tek's client, Harper Construction, refused to compensate A-Tek for $250,000 worth of work performed on an Edwards Air Force Base project after learning Jeff Newton was working for both A-Tek and Prodecomm on the project. (Id. ¶ 54.)

In 2019, Plaintiffs allege Jeff Newton began working with Sphere Mechanical, a direct competitor of A-Tek, and Thomas Pozananski, Sphere Mechanical's owner. (Id. ¶ 57.) Between 2019 and 2021, Jeff Newton was allegedly responsible for submitting all of A-Tek's contract bids. (Id. ¶ 77.) Plaintiffs allege that while Jeff Newton was working with A-Tek, Jeff Newton blind copied Pozananski on A-Tek's bid proposals and equipment and supplier quotes to help Sphere Mechanical out-bid A-Tek. (Id. ¶¶ 59, 60, 62–63.) Jeff Newton allegedly notified some of the general contractors A-Tek worked with that A-Tek would not be submitting bids on projects that A-Tek did intend to bid for in order to help Sphere Mechanical. (Id. ¶ 62.) Jeff Newton allegedly also used A-Tek's client base and network to market Sphere Mechanical's services. (Id.) Sphere Mechanical allegedly offered Jeff Newton the position of Vice President of Sphere Mechanical while Jeff Newton was still working with A-Tek. (Id. ¶ 58.) Plaintiffs allege they were unaware of Jeff Newton's relationship with Sphere Mechanical and actions on behalf of Sphere Mechanical until after Jeff Newton was fired from A-Tek. (Id. ¶¶ 57, 73–75, 79.)

Around 2017, Plaintiffs allege A-Tek's business began to suffer due to Jeff Newton's financial advice, mistakes on bids, and split involvement with Prodecomm. (Id. ¶ 44.) A-Tek was allegedly not awarded any contracts between 2019 and 2021, when Jeff Newton was responsible for submitting A-Tek's bids. (Id. ¶¶ 75–77.) Plaintiffs allege they originally believed A-Tek's lack of contracts was due to the COVID-19 pandemic. (Id. ¶ 75.) However, after learning of Jeff Newton's relationship with Sphere Mechanical, Plaintiffs allege Jeff Newton worked to divert bids from A-Tek to Sphere Mechanical,

causing A-Tek's financial distress. (Id. ¶ 75.)

In August 2021, A-Tek terminated its relationship with Defendants. (Id. ¶ 64.) On August 27, 2021, A-Tek restricted Jeff Newton's access to his email account and A-Tek's company server files. (Id. ¶ 72.) Plaintiffs allege they reviewed Jeff Newton's emails and discovered Jeff Newton's relationship with Sphere Mechanical and Pozananski. (Id. ¶¶ 72–73, 79.) Plaintiffs also allege Jeff Newton "had been engaging in communications with several potential investors regarding plans for [Jeff Newton] to take over [A-Tek]." (Id. ¶ 95.) Plaintiffs allege Jeff Newton's actions were intended to "create[] the appearance that [A-Tek] was unprofitable" so Jeff Newton could "intentionally sabotaged [A-Tek's] operations to buy out the company at a cheaper price." (Id.) Plaintiffs also allege Jeff Newton attempted to recruit some of A-Tek's employees. (Id. ¶ 96.)

After A-Tek terminated Defendants in August 2021, A-Tek sent KHW an End-of-Service notice. (Id. ¶¶ 65–66.) The End-of-Service notice requested KHW send A-Tek a final invoice, return A-Tek's computers and accessories A-Tek had provided Defendants, and delete A-Tek's intellectual property and discontinue accessing A-Tek's company files and software. (Id.) In response, Defendants allegedly sent A-Tek an non-itemized final invoice for $20,500, which was significantly higher than the $1,090.36 final invoice A-Tek projected it owed KHW. (Id. ¶¶ 67, 70.) Defendants allegedly also filed a preliminary mechanic's lien on one of A-Tek's current projects. (Id. ¶ 67.) Defendants allegedly have not return any of A-Tek's equipment and notified Plaintiffs that they will retain A-Tek's property as collateral until A-Tek pays the invoice. (Id. ¶¶ 67–69.)

On January 29, 2022, Plaintiff filed a complaint in federal court under diversity jurisdiction alleging twelve state law causes of action against Defendants: (1) alter ego; (2) breach of contract; (3) breach of the covenant of good faith and fair dealing; (4) breach of fiduciary duty; (5) trespass to chattels; (6) fraud; (7) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq.; (8) intentional interference with existing contract; (9) intentional interference with prospective economic advantage; (10) unjust enrichment and constructive trust; (11) declaratory relief; and (12)

injunctive relief. (Doc. No. 1.) On February 14, 2022, Plaintiffs filed the present motion to dismiss. (Doc. No. 8.) On February 16, 2022, Plaintiffs filed an opposition, (Doc. No. 13), and on February 18, 2022, Defendants filed a reply. (Doc. No. 15)

## DISCUSSION

### I.   Legal Standards

#### A. Federal Rule of Civil Procedure 12(b)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint if the plaintiff has failed to state a claim upon which relief can be granted. See Conservation Force v. Salazar, 646 F.3d 1240, 1241–42 (9th Cir. 2011). In reviewing a Rule 12(b)(6) motion to dismiss, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007). However, "[d]ismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008) (citation omitted).

In reviewing the plausibility of a complaint on a motion to dismiss, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F.3d 1025, 1031 (9th Cir. 2008).  Courts are not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Secs. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008).

#### B. Federal Rule of Civil Procedure 9(b)

Claims sounding in fraud are subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud

or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "Rule 9(b) demands that the circumstances constituting the alleged fraud 'be specific enough to give defendants notice of the particular misconduct…so that they can defend against the charge and not just deny that they have done anything wrong.'" Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009) (citation omitted). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted). "The plaintiff must set forth what is false or misleading about a statement, and why it is false." Id.

**II. Analysis**

   **A. Claims Brought by Plaintiff Phom**

   Defendants argue that Plaintiff Phom should be dismissed because the causes of action alleged in the complaint belong exclusively to A-Tek as a corporation, not Plaintiff Phom individually. (Doc. No. 8-1 at 10–11.) Under federal permissive joinder rules, "[p]ersons may join in one action as plaintiffs if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transaction or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1).  Rule 20(a) "is to be construed liberally in order to promote trial convenience and to expedite the final determination of disputes, thereby preventing multiple lawsuits." League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency, 559 F.2d 914, 917 (9th Cir. 1977). "[T]he impulse is towards entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." Id. (quoting United Mine Workers of Am. v. Gibbs, 383 U.S. 716, 724 (1966)).

   Plaintiffs allege that Plaintiff Phom was the owner of A-Tek at the relevant time period, that Plaintiff Phom was "personally liable for all of [A-Tek's] debts and financial liabilities," and that Plaintiff Phom's personal credit score was affected by A-Tek financial distress resulting from Defendants' actions. (Compl. ¶ 46.) Accordingly, the Court declines

6

to dismiss Plaintiff Phom from this action at this time. Defendants' arguments are more appropriate for a motion for summary judgment when the record is more fully developed.

### B. Plaintiffs' Pre-August 2017 Claims Against Defendant KHW

Defendants also challenge all claims against Defendant KHW that predate August 2017. (Doc. No. 8-1 at 45.) Specifically, Defendants allege that between July 2014 and July 2017 a separate KHW entity was incorporated in California under the KHW name. (Id. at 4.) Defendants argue the California KHW was dissolved in July 2017, and Defendant KHW was incorporated in Colorado in August 2017. (Id.) Defendants argue Plaintiffs errored in not distinguishing between the two separate KHW entities in the complaint and improperly alleged operative facts against the Colorado KHW that pre-date its incorporation in August 2017. (Id.) Defendants allege that Plaintiff cannot join the dissolved California KHW without destroying diversity jurisdiction and so any claims based on acts by the Colorado KHW before August 2017 should be dismissed. (Id. at 5.)

Successor liability is an equitable doctrine that allows liability to "flow[] from one corporation to another corporation." Cleveland v. Johnson, 147 Cal. Rptr. 3d 772, 782 (Ct. App. 2012). In California, a purchasing corporation assumes the seller's liabilities if "the purchasing corporation is a mere continuation of the selling corporation." Brown Bark III, L.P. v. Haver, 162 Cal. Rptr. 3d 9, 20 (Ct. App. 2013). Under the "continuation theory" of successor liability, "corporations cannot escape liability by mere change of name or a shift in assets when and where it is shown that the new corporation is, in reality, but a continuation of the old." Cleveland, 147 Cal. Rptr. 3d at 781–82. Successor liability based on "mere continuation" requires "a showing of one or both of the following factual elements: (1) no adequate consideration was given for the predecessor corporation's assets and made available for meeting the claims of its unsecured creditor; (2) one or more persons were officers, directors, or stockholder of both corporations." Id. at 782 (quoting Ray v. Alad Corp., 560 P.3d 3, 7 (Cal. 1977)).

Plaintiffs did not address successor liability in their complaint or opposition. However, at the motion to dismiss stage, Plaintiffs have adequately plead that the Colorado

KHW is a successor-in-interest to the dissolved California KHW. Plaintiffs allege Jeff and Sarah Newton founded KHW in 2014. (Compl. ¶ 35.) Plaintiffs allege that in April 2017, Jeff and Sarah Newton relocated to Yuma, Colorado and so "consequently, Defendant KHW…relocated to Yuma, Colorado." (Id. ¶ 43.) Plaintiffs allege, and Defendants do not dispute, that the dissolved California KHW and Colorado KHW were run solely by Jeff and Sarah Newton and KHW maintained A-Tek as a client through the dissolution and reincorporation. (Id. ¶ 43.) Public filings indicate that Sarah Newton was the director of the California KHW and is the registered agent and incorporator of the Colorado KHW.[2] Public filings also indicate that the California KHW was dissolved on July 25, 2017, a few days before the Colorado KHW was incorporated on August 1, 2017.[3] As a result, the Court declines to dismiss claims against KHW that predate its incorporation in Colorado in 2017.

### C. Plaintiffs' Covenant of Good Faith and Fair Dealing Claim

In the complaint, Plaintiffs assert a breach of the covenant of good faith and fair dealing claim based on the Confidentiality Agreements allegedly executed between Jeff and Sarah Newton and A-Tek on July 24, 2017. (Compl. ¶¶ 118–25.) Defendants argue that Plaintiffs' breach of the covenant of good faith and fair dealing claim should be dismissed because it duplicates its breach of contract claim. (Doc. No. 8-1 at 14–15.)

"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Foley v. Interactive Data Corp., 765 P.2d 373, 389 (Cal. 1988). The implied covenant of good faith and fair dealing in every contract obligates "that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." Comunale v. Traders & Gen. Ins. Co., 328 P.2d 198, 200 (Cal. 1958);

---

[2] Defendants request the Court take judicial notice of public records available on the California and Colorado Secretary of State website. (Doc. No. 8-2.) "Under Fed. R. Evid. 201, a court may take judicial notice of 'matters of public record.'" Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001). The Court takes judicial notice of (1) the Articles of Incorporation for KHW Service, Inc. accessed from the Colorado Secretary of State website and (2) the Services Certificate of Dissolution for KHW Service, Inc. accessed from the California Secretary of State website. See, e.g., eBay Inc. v. Digital Point Solutions, Inc., 608 F.Supp.2d 1156, 1164 n.6 (N.D. Cal. 2009).

[3] Id.

see also Thrifty Payless, Inc. v. The Americana at Brand, LLC, 160 Cal. Rptr. 3d 718, 729–30 (Ct. App. 2013) ("The covenant is read into contract and functions 'as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract.'" (citation omitted)).

To assert a claim for the breach of the covenant of good faith and fair dealing, plaintiffs "must show that the conduct of the defendant, whether or not it also constitutes a breach of a consensual contract term, demonstrates a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgement or negligence but rather by a conscious and deliberate act." Careau & Co. v. Sec. Pac. Bus. Credit, Inc., 222 Cal. App. 3d 1371, 1395 (1990). Such conduct must "unfairly frustrate[] the agreed common purposes and disappoint[] the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement." Id. But "[i]f the allegations do not go beyond the statement of a mere contract and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." Id.

Plaintiffs have sufficiently alleged a breach of the covenant of good faith and fair dealing claim against Defendants. Plaintiffs allege Jeff and Sarah Newton each executed a Confidentiality Agreement with A-Tek on July 24, 2017. (Compl. ¶¶ 118–25.) As a result, Plaintiffs have sufficiently alleged that contracts existed between Defendants and A-Tek, and Defendants each had "a duty of good faith and fair dealing in its performance and its enforcement." Foley, 765 P.2d at 390. Plaintiffs have sufficiently alleged Defendants violated this duty through "(1) knowingly and willfully competing with Plaintiffs, (2) sending Plaintiffs' bid proposals to direct competitors, (3) directing Plaintiffs' clients to competitors; (4) colluding with Plaintiffs' competitors with the intent of directing business opportunities away from Plaintiffs, (5) working for and/or accepting employment with a direct competitor of Plaintiffs while bound by the terms of the Confidentiality Agreement,

[and] (6) misappropriating Plaintiff's proprietary and confidential information for the benefit of Plaintiffs' competitors." (Compl. ¶ 131.)

Further, taking the allegations in the light most favorable to Plaintiffs, Plaintiffs' breach of the covenant of good faith and fair dealings claim is not "duplicative" or "superfluous" of Plaintiffs' breach of contract claim because Plaintiffs have sufficiently alleged Defendants acted knowingly and "in bad faith to frustrate the [Confidentiality Agreements'] benefits." Celador Intern. Ltd. v. Walt Disney Co., 347 F. Supp. 2d 846, 852–53 (C.D. Cal. 2014) (citations omitted) ("Even if Plaintiffs are not ultimately successful on their breach of contract claim, they may still be able to prevail on their breach of the covenant of good faith and fair dealing claim….because the fact finder could conclude that the actions of Defendants frustrated a benefit of the contract."). The Court therefore declines to dismiss Plaintiffs' breach of the covenant of good faith and fair dealing claim. Defendants' arguments are more appropriate on a motion for summary judgment when the record is more fully developed.

**D. Plaintiffs' Fiduciary Duty Claim**

In the complaint, Plaintiffs allege a breach of fiduciary duty claim against Defendants. (Compl. ¶¶ 134–45.) Defendants argue Plaintiffs have not alleged sufficient facts to support that a fiduciary relationship existed between Plaintiffs and Defendants and so Plaintiffs' breach of fiduciary duty claims should be dismissed. (Doc. No. 8-1 at 15–17.)

"The elements of cause of action for breach of fiduciary duty are the existence of a fiduciary relationship, its breach, and damage proximately caused by that breach." Knox v. Dean, 140 Cal. Rptr. 3d 569, 582–83 (Ct. App. 2012). "Traditional examples of fiduciary relationships in the commercial context include trustee/beneficiary, directors and majority shareholders of a corporation, business partners, joint adventurers, and agent/principal." Wolf v. Super. Ct., 107 Cal. App. 4th 25, 29 (2003). "Inherent in each of these relationships is the duty of undivided loyalty the fiduciary owes to its beneficiary, imposing on the fiduciary obligations far more stringent than those required of ordinary contractors." Id.

"An agent is one who represents another, called the principal, in dealings with third persons…Whether a person performing work for another is an agent…depends primarily upon whether the one for whom the work is done has the legal right to control the activities of the alleged agent." Michelson v. Hamada, 29 Cal. App. 4th 1566, 1579 (1994) (internal citations and quotations omitted). Whether an individual is an agent is a factual question. See Rookard v. Mexicoach, 680 F.2d 1257, 1261 (9th Cir. 1982).

Plaintiffs have sufficiently alleged a breach of fiduciary duty claim against Defendants. First, Plaintiffs have sufficiently alleged Defendants were in a fiduciary relationship with Plaintiffs. In the complaint, Plaintiffs reference the agent/principal relationship as the basis of Defendants' fiduciary relationship. (Compl. ¶¶ 137–39.) Plaintiffs allege Jeff Newton was given an A-Tek email address, (id. ¶¶ 72–73), Jeff Newton was responsible for submitting contract bids on behalf of A-Tek, (id. ¶ 77), and Jeff Newton communicated with general contractors on behalf of A-Tek and held himself out as speaking on behalf of A-Tek. (Id. ¶ 62.) Plaintiffs also allege Sarah Newton worked as A-Tek's accountant. (Id. ¶¶ 26–27.) Viewed in the light most favorable to Plaintiffs, these allegations could give rise to a reasonable inference that an agent-principal relationship was created between Defendants and A-Tek. Second, Plaintiffs sufficiently alleged this fiduciary relationship was breached when Defendants forwarded A-Tek's bid proposals to A-Tek's competitor, Sphere Mechanical, and used A-Tek's confidential information to aid Sphere Mechanical. (Id. ¶ 142.) Third, Plaintiffs allege Defendants' actions caused A-Tek mechanical to lose contract bids. (Id. ¶ 77.) Accordingly, the Court declines to dismiss Plaintiffs' breach of fiduciary duty claims. Defendants' arguments are more appropriate for a motion for summary judgment when the record is more fully developed.

### E. Plaintiffs' Trespass to Chattels Claim

In the complaint, Plaintiffs allege trespass to chattels claims against Defendants. (Compl. ¶¶ 146–58.) Defendants argue Plaintiffs' trespass to chattels claims does not meet the pleading standard of Federal Rule of Civil Procedure 8(a) because Plaintiffs did not

indicate which items of Defendants' property were subject to trespassed. (Doc. No. 8-1 at 9–10.)

"Under California law, trespass to chattels 'lies where an intentional interference with the possession of personal property has proximately caused injury.'" Intel Corp. v. Hamidi, 71 P.3d 296, 302 (Cal. 2003) (citation omitted). "[S]ome actual injury must have occurred in order for a trespass to chattels to be actionable" and a plaintiff "may recover only the actual damages suffered by reason of the impairment of the property or the loss of its use." Id.

Plaintiffs have sufficiently alleged a trespass to chattels claim against Defendants. Plaintiffs allege that when Plaintiffs terminated their business relationship with Defendants, Defendants informed Plaintiffs they were retaining A-Tek's property as collateral until they were paid the final invoice. (Compl. ¶¶ 67–68, 151.) Plaintiffs allege this property included Plaintiffs' computers, computer software and programs, equipment, and tools. (Id. ¶¶ 151–53, 155.) Plaintiffs allege that Defendants retained Plaintiffs' property without consent and refused to return Plaintiffs' property when Plaintiffs' sent Defendants an End-of-Service notice. (Id. ¶ 154.) Plaintiffs allege Defendants' conduct has prevented Plaintiffs from using their property in their business, causing Plaintiffs to lose profits they would have realized through the use of their property. (Id. ¶ 155.) Taking the allegations in the light most favorable to Plaintiffs, Plaintiffs have alleged sufficient facts to support their trespass to chattels claim. As a result, the Court denies Defendants' motion to dismiss Plaintiffs' trespass to chattels claim.

**F.  Plaintiffs' Fraud Claim**

In the complaint, Plaintiffs allege a fraud claim against Defendants. (Compl. ¶¶ 159–74.) Defendants argue Plaintiffs have not met the heightened pleading standard for fraud claims under Federal Rule of Civil Procedures 9(b) and so Plaintiffs' fraud claim should be dismissed. (Doc. No. 8-1 at 5–9.)

The elements of fraud are: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to

induce reliance; (d) justifiable reliance; and (e) resulting damage." <u>Engalla v. Permanente Med. Grp., Inc.</u>, 938 P.2d 903, 974 (Cal. 1997) (citation omitted). "A fraud claim based upon the suppression or concealment of a material fact must involve a defendant who had a legal duty to disclose the fact." <u>Hoffman v. 162 N. Wolfe LLC</u>, 175 Cal. Rptr. 3d 820, 826 (Ct. App. 2014). "There are 'four circumstances in which nondisclosure or concealment may constitute actionable fraud: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not know to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts.'" <u>LiMandri v. Judkins</u>, 60 Cal. Rptr. 2d 539, 543 (Ct. App. 1997) (citation omitted). Other than when there is "a fiduciary relationship between the parties, 'the other three circumstances in which nondisclosure may be actionable presuppose[] the existence of a relationship between the plaintiff and defendant in which a duty to disclose can arise." <u>Hoffman</u>, 175 Cal. Rptr. 3d at 827 (citation omitted). In the later three circumstances, "a duty to disclose may arise from the relationship between seller and buyer, employer and prospective employee, doctor and patient, or parties entering into any kind of contractual agreement." <u>Id.</u> (citation omitted).

Plaintiffs' fraud claim is subject to the heightened pleading standard requirements of Federal Rule of Civil Procedure 9(b). <u>See</u> <u>Kearns</u>, 567 F.3d at 1125. However, "because a plaintiff brings fraud by omission claims 'will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim,' plaintiffs may plead fraud by omission by alternative means." <u>Mui Ho v. Toyota Motor Corp.</u>, 931 F. Supp. 2d 987, 999 (N.D. Cal. 2013) (citation omitted).

Taking the allegations in the light most favorable to Plaintiffs, Plaintiffs have alleged sufficient facts to support their fraud claim. Plaintiffs have alleged that at the time of the alleged nondisclosure, Plaintiffs and Defendants had been in a multi-year business relationship and had entered into contractual agreements that plausibly could give rise to a duty to disclose. (Compl. ¶¶ 14, 27–28, 97–98.) Plaintiffs alleged Defendants failed to

disclose their relationship with Sphere Mechanical when Defendants were working on behalf of A-Tek. (Id. ¶¶ 164–66.) Plaintiffs alleged Defendants' nondisclosure was intended to induce Plaintiffs to continue to hire and compensate KHW for Jeff and Sarah Newton's services; to allow KHW to act on behalf of A-Tek in negotiating bid proposals, projects, and contracts; and to ensure KHW maintained access to A-Tek's computers, software, and consumer lists. (Id. ¶¶ 172–73.) Plaintiffs alleged they relied on Defendants' nondisclosure of their relationship with Sphere Mechanical in "not terminating the business relationship with Defendants far sooner" and allowing Defendants to have "continued access to [A-Tek's] computers, software, and consumer lists." (Id. ¶ 172.) Plaintiffs allege they suffered damages resulting from diverted business opportunities and profits, the denial of the opportunity to conduct business with current clients, the loss of bid awards, and the loss of contracts. (Id. ¶¶ 165–68.) Accordingly, Defendants' motion to dismiss Plaintiffs' fraud claim is denied. Defendants' arguments are more appropriate for a motion for summary judgment when the record is more fully developed.

### G. California Unfair Competition Law ("UCL") Claim

In the complaint, Plaintiffs allege a claim under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq., against Defendants. (Id. ¶¶ 175–80.) Defendants argue Plaintiffs' UCL claim should be dismissed because Plaintiffs have failed to allege a violation of a statute to constitutes an "unlawful" practice, that Plaintiffs have failed to allege a covered "unfair" practice, and Plaintiffs' have failed to sufficiently alleged a "fraudulent" practice under the heightened pleading standard of Rule 9. (Doc. No. 8-1 at 17–18.)

To bring a claim for a violation of California's UCL, "a plaintiff must show either an (1) 'unlawful, unfair, or fraudulent business act or practice,' or (2) 'unfair, deceptive, untrue or misleading advertising.'" Lippitt v. Raymond James Fin. Servs., 340 F.3d 1033, 1043 (9th Cir. 2003) (quoting Cal. Bus. & Prof. Code § 17200). The UCL's coverage is "sweeping," and its standard for wrongful business conduct is "intentionally broad." In re First Alliance Mortg. Co., 471 F.3d 977, 995 (9th Cir. 2006) (citation omitted). An

1  "unlawful" practice under the UCL is a business practice that "is forbidden by law." Cel-

2  Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 973 P.2d 527, 560 (Cal. 1999).

3      An "unfair" practice is a business practice that "offends an established public policy

4  or…is immoral, unethical, oppressive, unscrupulous or substantially injurious to

5  consumers." Id.; see also Day v. AT&T Corp., 74 Cal. Rptr. 2d 55, 59 (App. Ct. 1998)

6  ("An 'unfair' practice under section 17200 is one 'whose harm to the victim outweighs it

7  benefits.'"). "A fraudulent business practice is one that is likely to deceive members of the

8  public." Boschma v. Home Loan Ctr., Inc., 129 Cal. Rptr. 3d 874, 893 (App. Ct. 2011)

9  (citation omitted). "The challenged conduct 'is judged by the effect it would have on a

10  reasonable consumer.'" Davis v. HSBC Bank Nev., N.A., 691 F.3d 1152, 1169 (9th Cir.

11  2012). But "[u]nlike common law fraud, a [UCL] violation can be shown even without

12  allegations of actual deception, reasonable reliance and damage." Daugherty v. Am. Honda

13  Motor Co., Inc., 51 Cal. Rptr. 3d 118, 128 (App. Ct. 2006). "Absent a duty to disclose, the

14  failure to do so does not support a claim under the fraudulent prong of the UCL." Berryman

15  v. Merit Prop. Mgmt., Inc., 62 Cal. Rptr. 3d 177, 188 (App. Ct. 2007). The heightened

16  pleading standard of Fed. R. Civ. P. 9(b) applies to UCL claims brought under a fraud

17  theory.  Kearns, 567 F.3d at 1125.

18      Taking the allegations in the light most favorable to Plaintiffs, Plaintiffs have alleged

19  sufficient facts to support an UCL claim under the "fraudulent" business practices prong.

20  Because Plaintiffs have sufficiently alleged facts to support its common law fraud claim,

21  Plaintiffs have also sufficient plead its UCL claim under the fraudulent prong. See

22  Bouchma, 129 Cal. Rptr. 3d at 874 n.12 (holding that because the defendant adequately

23  plead a common law fraud claim, the defendant also adequately pled a UCL claim under

24  the fraudulent prong because the fraudulent prong claim "is easier to prove in the section

25  17200 context"). As a result, the Court denies Defendants' motion to dismiss Plaintiffs'

26  UCL claim. Defendants' arguments are more appropriate on a motion for summary

27  judgment when the record is more fully developed.

28  ////

### H. Plaintiffs' Intentional Interference with Existing Contract Claim

In the complaint, Plaintiffs allege an intentional interference with existing contract claim against Defendants. (Compl. ¶¶ 191–200.) Defendants argue that Plaintiffs have not alleged any intentional acts committed by Defendants designed to induce a breach of a third-party contract and so Plaintiffs' intentional interference with an existing contract claim should be dismissed. (Doc. No. 8-1 at 19.)

"Tortious interference with contractual relations requires '(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach of disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damages.'" <u>Ixchel Pharma, LLC v. Biogen, Inc.</u>, 471 P.3d 571, 575 (Cal. 2020). "An actionable claim for interference with contractual relationships does not require that the defendant have the specific intent to interference with a contract. A plaintiff states a claim so long as it alleges that the defendant knew interference was 'certain or substantially certain to occur as a result of [defendant's] action.'" <u>Id.</u> at 675–76 (citation omitted).

Construing the allegations in the light most favorable to Plaintiffs, Plaintiffs have sufficiently alleged an intentional interference with existing contract claim against Defendants. Plaintiffs allege Defendants interfered with the existing contract between A-Tek and Harper Construction for a project on the Edwards Air Force Base and that Defendants knew of the Harper Construction contract through working on it on behalf of A-Tek. (Compl. ¶¶ 50–51, 54, 188.) Plaintiffs allege Jeff Newton also worked on behalf of Prodecomm on the Edwards Air Force Base project. (Id. ¶¶ 50–51.) Plaintiffs allege Harper Construction refused to compensate A-Tek $250,000 for the project after learning that Jeff Newton was working for both A-Tek and Prodecomm on the Edwards Air Force Based project. (<u>Id.</u> ¶ 54.) To state a claim for intentional interference with existing contract, "it is not necessary that the defendant's conduct be wrongful apart from the interference with the contract itself." <u>Quelimane Co.v. Stewart Title Guar. Co.</u>, 960 P.2d 513, 530 (Cal. 1998).

As a result, Defendants' motion to dismiss Plaintiffs' intentional interference with existing contract claim against Jeff Newton and HKW is denied. Defendants' arguments are more appropriate on a motion for summary judgment when the record is more fully developed.

### I. Intentional Interference with Prospective Economic Advantage Claim

In the complaint, Plaintiffs allege an intentional interference with prospective economic advantage against Defendants. (Compl. ¶¶ 181–90.) Defendants argue that Plaintiffs have not alleged any intentional acts committed by Defendants designed to disrupt an existing relationship or any economic harm suffered by Plaintiffs as a result of Defendants' actions, and so Plaintiffs' intentional interference with an existing contract claim should be dismissed. (Doc. No. 8-1 at 19–20.)

"The tort of interference with prospective economic advantage protects the same interest in stable economic relationships as does the tort of interference with contract, though interference with prospective advantage does not require proof of a legally binding contract." Pacific Gas & Elec. Co. v. Bear Stearns & Co., 791 P.2d 587, 590 (Cal. 1990). "The chief practical distinction between interference with contract and interference with prospective economic advantage is that a broader range of privilege to interfere is recognized when the relationship or economic advantage interfered with is only prospective." Id. "Intentional interference with prospective economic advantage has five elements: (1) the existence, between the plaintiff and some third party, of an economic relationship that contains the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentionally wrongful acts designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm proximately caused by the defendant's action." Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc., 388 P.3d 800, 803 (Cal. 2017). "The tort's requirements 'presuppose the relationship existed at the time of the defendant's alleged tortious acts lest liability be imposed for actually and intentionally disrupting a relationship which has yet to arise.'" Id. at 807–08. "Specific intent is not a required element of the tort of interference with prospective economic advantage." Korea Supply Co. v. Lockheed Martin Corp., 63 P.3d

937, 951 (Cal. 2003). Unlike with an intentional interference with existing contract claim, "a plaintiff seeking to recover damages for interference with prospective economic advantage must plead as an element of the claim that the defendant's conduct was 'wrongful by some legal measure other than the fact of the interference itself.'" Ixchel, 470 P.3d at 576. "[I]t must be reasonably probable that the prospective economic advantage would have been realized but for defendant's interference." Youst v. Longo, 729 P.2d 728, 733 (Cal. 1987) (citation omitted).

Plaintiffs have sufficiently alleged an intentional interference with prospective economic advantage claim against Defendants. Plaintiffs allege A-Tek had an economic relationship with Webcor, an alleged existing client of A-Tek. (Compl. ¶ 79.) Plaintiffs allege Jeff Newton forwarded A-Tek's bid proposals and blind copied Sphere Mechanical on emails containing A-Tek's bid information while he was responsible for submitting bids on behalf of A-Tek during the time period A-Tek bid on the Webcor project. (Id. ¶¶ 73–74, 77, 79.) Plaintiffs allege Jeff Newton provided A-Tek's bid information to Sphere Mechanical so Sphere Mechancial could submit more competitive bids on the same projects as A-Tek. (Id. ¶ 77.) Plaintiffs allege A-Tek submitted a bid on a project with Webcor in April 2021 but was not awarded the Webcor contract. (Id. ¶ 79.) Plaintiffs allege they discovered an email sent by Jeff Newton on October 8, 2021 confirming Sphere Mechanical received the Webcor contract. (Id.) Construing the allegations in the light most favorable to Plaintiffs, a reasonable inference can be drawn that Defendants intentionally and wrongfully interfered with A-Tek's business relationship with Webcor by forwarding A-Tek's bids to Sphere Mechanical, resulting in A-Tek losing the Webcor project award to Sphere Mechanical. As a result, the Court denies Defendants' motion to dismiss Plaintiffs' intentional interference with prospective economic advantage. Defendants' arguments are more appropriate for a motion for summary judgment when the record is more fully developed.

### J.  Plaintiffs' Alter Ego Claim

In the complaint, Plaintiffs assert an alter ego claim against all Defendants. (Compl.

¶¶ 103–17.) Specifically, Plaintiffs argue that the Court should pierce the corporate veil and disregard the corporate form to hold Defendants Jeff and Sarah Newton liable for A-Tek's conduct. (Id. ¶ 117.) Plaintiffs argue that without piercing the corporate veil, Plaintiff will be unable to recover damages owed by Defendants. (Id.) Defendants argue Plaintiffs' alter ego claim should be dismissed because alter ego is not an independent claim for relief and Plaintiffs have not alleged sufficient facts to support imposing the alter ego doctrine in this case. (Doc. No. 8-1 at 12–14.)

Under the alter ego doctrine, a court "will disregard the corporate entity and will hold the individual shareholders liable for the actions of the corporation." Mesler v. Bragg Mgmt. Co., 702 P.3d 601, 606 (Cal. 1985). "The alter ego doctrine arises when a plaintiff comes into court claiming that an opposing party is using the corporate form unjustly and in derogation of the plaintiff's interest." Id. "A claim against a defendant, based on the alter ego theory, is not itself a claim for substantive relief, e.g., breach of contract or to set aside a fraudulent conveyance, but rather, procedural…" Ahcom, Ltd. v. Smeding, 623 F.3d 1248, 1251 (9th Cir. 2010) (citation omitted). "Instead of creating, enforcing, or expounding on substantive duties, California's alter ego doctrine merely acts as a procedural mechanism by which an individual can be held jointly liable for the wrongdoing of his or her corporate alter ego." Double Bogey, L.P. v. Enea, 794 F.3d 1047, 1051–52 (9th Cir. 2015) (citation omitted).

For the alter ego doctrine to apply, a plaintiff must allege (1) that there is "such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist" and (2) that "if the acts are treated as those of the corporation alone, an inequitable result will follow." Mesler, 702 P.3d at 606 (citation omitted). To plead inequity under the second prong, "a plaintiff must plead facts sufficient to demonstrate that 'conduct amounting to bad faith makes it inequitable for the corporate owner to hide behind the corporate form.'" Stewart v. Screen Gems-EMI Music, Inc., 81 F. Supp. 3d 938, 963 (N.D. Cal. 2015) (citation omitted). "California courts have rejected the view that the potential difficulty a plaintiff faces collecting a judgment is an inequitable

3:21-cv-01974-H-WVG

result that warrants application of the alter ego doctrine." <u>Neilson v. Union Bank of Cal.,</u> <u>N.A.</u>, 290 F. Supp. 2d 1101, 1117 (C.D. Cal. 2003).

First, Plaintiffs have improperly attempted to assert the alter ego doctrine as a substantive claim for relief in their complaint. <u>See</u> <u>Ahcom</u>, 623 F.3d at 1251. Second, Plaintiffs have not sufficiently alleged that there is any inequitable result from recognizing KHW's separate corporate form necessitating the application of the alter ego doctrine in this case. Plaintiffs' breach of contract and breach of the covenant of good faith and fair dealing claims are based on contracts directly between A-Tek and Jeff and Sarah Newton in their individual capacity. (Compl. ¶¶ 120, 130.) Second, the remainder of Plaintiffs' claims are tort claims brought against Defendants for alleged actions specifically taken by Jeff and Sarah Newton. (<u>Id.</u> ¶¶ 134–209.) "A corporate 'officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf." <u>Transgo, Inc. v. Ajac Transmission Parts Corp.</u>, 768 F.2d 1001, 1021 (9th Cir. 1985). As a result, Jeff and Sarah Newton will not be able to "hide behind [KHW's] corporate form" for their own alleged tortious actions. <u>See</u>, <u>e.g.</u>, <u>Hawes v. Kabani & Co., Inc.</u>, 182 F. Supp. 3d 1134, 1144 (W.D. Wash. 2016). Accordingly, Defendants have not sufficiently alleged that the alter ego doctrine is applicable or necessary in the present case.

### K. Declaratory Relief

In the complaint, Plaintiffs request declaratory relief of "a judicial determination of the respective rights and duties of the parties" so that "Plaintiffs may ascertain their rights under the Confidentiality Agreement and the true identities, rights, and responsibilities of the individual defendants and the entity defendant." (Compl. ¶¶ 103–17.) Defendants argue Plaintiffs have not alleged a controversy exists between the parties regarding the rights of the parties under the Confidentiality Agreement and so Plaintiffs declaratory judgment claim should be dismissed. (Doc. No. 8-1 at 20–21.)

Under the Declaratory Judgment Act, "[a]ny court of the United States, upon the filing of the appropriate pleading, may declare the rights and other legal relations of any

interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C § 2201. "The Declaratory Judgment Act does not create any new substantive rights in federal courts, but instead creates a procedure for adjudicating existing rights." <u>People of California v. Kinder Morgan Energy Partners, L.P.</u>, 569 F. Supp. 2d 1703, 1091 (S.D. Cal. 2008). "For a district court, the appropriate inquiry is to determine whether there are claims in the case that exist independent of any request for purely declaratory relief; that is claims that would continue to exist if the request for a declaration simply dropped from the case." <u>Id.</u> (citation omitted); <u>see also</u> <u>Cultiv8 Interest LLC v. Rezai</u>, 2:20-cv-05290-AB, 2020 WL 12893817, *9–10 (C.D. Cal. Oct. 15, 2020). Plaintiffs' declaratory relief claim is premised on Plaintiffs' contract-based claims, and Plaintiffs have sufficiently alleged their contract-based claims to survive a motion to dismiss. As a result, Defendants' motion to dismiss Plaintiffs' claim for declaratory relief is denied. While declaratory relief may ultimately be inappropriate in the present case, Defendants' arguments are more appropriate on a motion for summary judgment when the record is more fully developed.

## **CONCLUSION**

For the foregoing reasons, the Court denies Defendants' motion to dismiss.

**IT IS SO ORDERED.**

DATED: August 1, 2022

_____

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

3:21-cv-01974-H-WVG